The **RESOLUTION TRUST CORP.,** Plaintiff,

v.

Joseph B. **WOOD, et al.,** Defendants.

No. 92–2204HBre.

United States District Court,
W.D. Tennessee,
Western Division.

Nov. 30, 1994.

Robert E. Craddock, Jr., McDonnell Dyer, Memphis, TN, William D. Ballaine, Siff Rosen, P.C., New York City, for Resolution Trust Corp.

Virginia B. Wilson, Stanley M. Huggins, Huggins & Associates, Memphis, TN, for Joseph B. Wood, Linda M. Williams.

Rebecca Adelman, Albert C. Harvey, Thomason Hendrix Harvey Johnson & Mitchell, Memphis, TN, for William C. Harris.

William C. Harris, pro se.

James H. Kee, Johnson Grusin Kee & Surprise, Memphis, TN, for David J. Johnson.

William R. Bradley, James S. Gilliland, Glankler Brown Gilliland Chase Robinson & Raines, Memphis, TN, for J. Davant Latham.

Lloyd E. Cole, Jr., Law Offices of Lloyd E. Cole, Stilwell, OK, for Lewis J. Lundberg.

Linda M. Williams, pro se.

John J. Heflin, III, Rickey Bourland Heflin & Alvarez, Memphis, TN, Matt D. Ober, Peter K. Rosen, Rosen & Winston, Los Angeles, CA, for John W. Bowman, Pannell, Kerr, Forster.

Stephen W. Vescovo, Thomason Hendrix Harvey Johnson & Mitchell, Virginia B. Wilson, Memphis, TN, for James Garland Wood, Jr.

Matt D. Ober, Rosen & Winston, Los Angeles, CA, for Neal A. Hochberg, Laurence Herrup, Robert F. Ganger, Stuart K. Furman, Marc Abrams, Michael C. Sommers, Thomas J. Beneventi, Lawrence E. Bloom, W. Thomas Brunberg, Don I. Criswell, James R. Duby, John N. Earley, Donald M. Edwards, John A. Yannacone, Harvey Wershbale, Robert G. Turner, Jr., Granville

R. Gargiulo, D. Roger Jenkins, Richard A. Connor, Jr., Donald J. Schmidt, Donald J. Lotquist, Garry W. Smith, Marie L. Dexter, John C. Love, Angel A. Unzalu, Irving Heller, W. Dean Jurgens, Christopher E. Smith, Ralph S. Bowden, William A. Bonott, Donald N. Cameron, Jr., Joseph C. Craig, Daryl D. Dekam, John R. Del Pizzo, Lawrence C. Elmer, Raymond E. Faulkner, Claude B. Granese, Peter A. Griffith, James R. Handley, Michael G. Kelstrom, Frank L. Koe, Joseph M. LeMaire, S. Lee Mayhew, Michael J. McNamara, James Nixon, Thomas J. Schultz, Raymond N. Skaddan, Ira Snyder, Richard D. Wickman, Sheldon J. Epstein, George J. Marose, Paul Radosevick, Jerome Sweeney, Kenneth W. Malloy, Ronald F. Saxe, Gerald C. Haas, Thomas A. Karnowski, Barclay N. Greene, L. Clarke Blynn, Lucien R. Battiato, Edward M. Burnell, William H. Leisten, Jr., Raymond F. Kamler, Robert Moss, James P. Nolan, Jr., N. Gordon Thompson, Prentice N. Ussery, Stanley Wachi, Robert W. Adams, Donald D. Anfinson, Alfonso C. Bellanca, Arthur Brien, James A. Butler, Ronald L. Cunningham, Erwin Ehrlich, Richard B. Engel, Jamie Figueroa, Geoffrey Flynn, Elwyn F. Freemonth, Edward N. Goldsberry, Eric F. Green, W. Patrick Greenlee, Saul Hammerman, Oris Hendrickson, Hubert D. Hoke, Evan B. Hume, Mike Isom, Peter Isenberg, John P. Jaeger, Charles Kaiser, Jr., Ronald W. Kaiser, Emanuel Laruia, Jr., Lawrence R. Lentini, Edward McGowen, John L. Norman, Michael Orlando, Graham Pope, Kevin F. Reilly, Humberto Roche, Wolfgang O. Rood, Charles M. Seidenberg, Jerome P. Solomon, Michael C. Thompson, Thomas M. Watson, Nathaniel Wechsler, Alan D. Westheimer, Arnold F. Wilpon, Maurice L. Yalman, Prentice N. Ursery, Joseph P. Alam, John L. Baldante, Daniel Condon, Kerry S. David, Thomas Donnelly, James R. Gill, Edward McGinity, Lawrence I. Morgan, Edward C. Nickles, III, Patrick O'Nigara, Ronald M. Pendergast, Warren Quigley, James H. Tinney, Ernest A. Watery, Donald R. White.

Matt D. Ober, Rosen & Winston, Los Angeles, CA, Gary J. Ceriani, Davis & Ceriani, P.C., Denver, CO, for James W. Hire.

Daniel C. Hanrahan, II, pro se.

Alan J. Brodsky, Jay F. Theise & Associates, Boston, MA, for Daniel C. Hanrahan, II.

Burton L. Graubart, pro se.

Sam B. Blair, Jr., Heiskell Donelson Bearman Adams Williams & Kirsch, Memphis, TN, Matt D. Ober, Rosen & Winston, Los Angeles, CA, for Albert J. Gomes, Joseph R. Taylor, Michael H. Cohn, Art F. Svoboda.

Michael A. Frigo, pro se.

Sam B. Blair, Jr., Heiskell Donelson Bearman Adams Williams & Kirsch, J. Alan Hanover, James R. Newsom, III, Christina Burdette, Hanover Walsh Jalenak & Blair, Memphis, TN, for Joel F. Ferguson.

Joel F. Ferguson, pro se.

Robert A. Ashenden, pro se.

Robert M. Nicoud, Jr., Godwin & Carlton, Dallas, TX, for R. Phillip Baker, Ronald E. Colburn, Edward B. Creager.

Edmund Baley, pro se.

J. Alan Hanover, Christina Burdette, Hanover Walsh Jalenak & Blair, Memphis, TN, for C. William Barker.

C. William Barker, pro se.

L. Wallace Behrenz, pro se.

Timothy F. Christiana, pro se.

J. Alan Hanover, James R. Newsom, III, Christina Burdette, Hanover Walsh Jalenak & Blair, Memphis, TN, for James H. Crofoot.

Richard Delaplane, pro se.

Thomas P. Dusky, pro se.

Steven L. Erickson, pro se.

Edward A. Wolff, Jr., pro se.

Mark C. Clements, Clements & Allen, P.C., Dallas, TX, for Edward A. Wolff, Jr., Kenneth B. Travis.

Axel Kleiboemer, Law Offices of Axel Kleiboemer, Washington, DC, for Daniel G. Whitshell.

W. Patrick Whitmore, pro se.

Kenneth B. Travis, pro se.

Sam B. Blair, Jr., Heiskell Donelson Bearman Adams Williams & Kirsch, Memphis, TN, Thomas C. DeVoto, Law Office of Thom-

as C. DeVoto, St. Louis, MO, for John T. Straub.

Mark C. Clements, Clements & Allen, P.C., Dallas, TX, for Janet M. Smith.

David Kahn, Altheimer & Gray, Chicago, IL, for Jared Shlass.

M. Douglas Tobler, Hammond Natoli & Tellier, P.C., Phoenix, AZ, for Stanley M. Sapp.

Alan J. Brodsky, Jay F. Theise & Associates, Boston, MA, for Rachel J. Roginsky.

John M. Peters, Novara Tesija Nouhan, P.C., Southfield, MI, for James F. Peters, Jr.

Michael Bleck, Minneapolis, MN, Lewie R. Polk, III, Gerber Law Offices, Memphis, TN, for Gary C. McEnelly.

Michael Bleck, Minneapolis, MN, for Dwaine C. Johnson.

Sam B. Blair, Jr., Heiskell Donelson Bearman Adams Williams & Kirsch, Memphis, TN, for Paul M. Jinneman, Scott R. Audrain, Robert L. Awana, Leonard R. Wohletz, Jr., Charles G. Pinkowski, Harold W. Perry, Jr., John M. Jorgenson.

James R. Hilliard, Law Offices of James R. Hilliard, Dallas, TX, for Daniel L. Jackson, Michael Burt.

James G. Howell, pro se.

Ralph S. Bowden, pro se.

Harold B. Tiller, pro se.

Robert E. Craddock, Jr., Larry Montgomery, McDonnell Dyer, Memphis, TN, Calvin C. Williams, Jr., Stamps & Stamps, Jackson, TN, for Billy Charlet.

Allen D. Ritchey, pro se.

Robert Moss, pro se.

Mark M. Dennis, Law Offices of Mark M. Dennis, Metairie, LA, for David L. McFadden.

Brenda H. Smith, Baker & Hostetler, Orlando, FL, for Robert Olsen.

Nicholas C. Ourso, Jr., pro se.

John J. Heflin, III, Rickey Bourland Heflin & Alvarez, Memphis, TN, Matt D. Ober, Rosen & Winston, Los Angeles, CA, for Pauline Contos.

## CONSOLIDATED ORDER GRANTING DEFENDANTS JOHNSON, HARRIS, AND J.G. WOOD'S MOTIONS FOR JUDGMENT ON THE PLEADINGS IN TOTAL, GRANTING DEFENDANTS WILLIAMS AND J.B. WOOD'S MOTIONS FOR JUDGMENT ON THE PLEADINGS IN PART AND DENYING THE MOTIONS IN PART, AND GRANTING DEFENDANT LATHAM'S MOTION FOR SUMMARY JUDGMENT IN TOTAL

HORTON, District Judge.

Plaintiff filed its complaint in the above-styled action on March 5, 1992. The original complaint contained tort and contract allegations against certain directors and officers of the Germantown Trust Savings Bank, "GTSB," and Germantown Capital Corporation, "GCC," and the accounting firm of Pannell, Kerr, Forster and some of its named and unnamed partners. (Complaint, p. 2). The defendants allegedly caused the bank to incur tremendous losses. (Id.). As a result of their alleged conduct, plaintiff assumed conservatorship of the bank on March 8, 1992. (Id.).

On July 29, 1994, the Court amended its previous order granting summary judgment to the unnamed PKF partner defendants. The amendment dismissed the tort claims alleged against those particular defendants but sustained the contract claims. (Order Granting Motion to Amend Order of May 16, 1994, and Order Granting RTC's Motion to Amend Complaint, p. 1). At the same time, the Court permitted plaintiff to amend its complaint in order to identify the previously unnamed PKF partners. (Id. at 2).

The amended complaint did not impact upon the causes of actions for which plaintiff wishes to hold the directors and officers liable. Pursuant to the amended complaint, all the directors and officers are allegedly liable for breach of implied contract, breach of fiduciary duty, gross negligence, negligence, and negligence per se. (Amended Complaint, pp. 60–61). While some of the causes

of action may arise from different transactions, they are the same nonetheless.

On April 25, 1994, Defendant David J. Johnson filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Two days later, Defendants William C. Harris, Jr. and James Garland Wood, Jr. and Defendants Joseph B. Wood and Linda M. Williams filed two individual motions for judgment on the pleadings. On the same day, Defendant Davant Latham filed a motion for summary judgment.

Although four motions were filed, the defendants present the same grounds for dismissal by contending that the applicable statute of limitations for Tennessee bars plaintiff's claims and causes of actions. (Johnson's Motion for Judgment on the Pleadings, p. 1); (Motion for Judgment on the Pleadings and Joinder, p. 1); (Motion for Judgment on the Pleadings by Joseph B. Wood and Linda M. Williams, p. 1); (Memorandum in Support of Davant Latham's Motion for Summary Judgment, p. 4). In summary, defendants present the following arguments:

1. The applicable statute of repose expired before the appointment of a conservator and the federal limitations of FIRREA have no application;

2. Application of the doctrine of adverse domination with regard to the tolling of the statute of limitations is a matter of state law;

3. The three year statute of repose can only be tolled by the fraudulent concealment of the cause of action by the defendants; and,

4. The complaint fails to allege fraudulent concealment by the defendants. (Johnson's Memorandum in Support of Motion for Judgment on the Pleadings, p. 4); (Memorandum of Facts and Law in Support of Motion for Judgment on the Pleadings and Joinder Submitted on Behalf of Defendants, William C. Harris, Jr. and James Garland Wood, Jr., pp. 3–4); (Memorandum in Support of Motion by Joseph B. Wood and Linda M. Williams for Judgment on the Pleadings, p. 2); (Davant Latham's Motion for Summary Judgment, p. 4).

Plaintiff filed a response opposing the motions for judgment on the pleadings without addressing Defendant Latham's motion for summary judgment.

In response to the motions to dismiss pursuant to Rule 12(c), plaintiff argues that dismissal is inappropriate. Plaintiff grounds its argument in the following statements:

1. Federal law governs whether the statute of limitations are tolled;

2. Adverse domination tolled the statute of limitations on the claims;

3. T.C.A. § 48–813 is the applicable state statute; and,

4. Even if T.C.A. § 48–18–601 applied, the statute has no retroactive effect and applies only to the claim of breach of fiduciary duty; and,

5. If T.C.A. § 48–16–601 is applied retroactively, the complaint contains sufficient allegations of adverse domination and fraudulent concealment to withstand a motion for judgment on the pleadings. (Resolution Trust Corporation's Brief in Opposition to Johnson's, Wood's, Williams', Harris', and Garland Wood's Motions for Judgment on the Pleadings, pp. 4–17).

While the local rules make no provision for a reply to responses, defendants submitted two pleadings with supplementary authority.

Both pleadings set forth changes in the applicable case authority and relevant law which occurred after defendants and plaintiff filed their original pleadings. On June 23, 1994, defendants challenged plaintiff's assertion that federal common law governs by relying upon a decision rendered by the U.S. Supreme Court ten days earlier. (Supplementary Authority in Support of Motions for Judgment on the Pleadings by Johnson, Wood, et. al., p. 1). On October 7, 1994, Defendant Johnson filed a second supplement which sets forth the amendment to FIRREA, 12 U.S.C. § 1821(d)(14), with regard to the applicable statute of limitations. (Johnson's Second Supplemental Authority in Support of Motion for Judgment on the Pleadings, p. 1).

Although substantial time has elapsed since the filing of the first supplement, plain-

tiff responded to the second supplement submitted by Defendant Johnson. In sum, plaintiff argues:

1. To the extent the recent amendment of 12 U.S.C. § 1821(d)(14) applies at all, the amendment supports the vitality of the RTC's claims against GTSB's directors and officers;

2. *O'Melveny* did not eliminate the principles underlying the vitality of the doctrine of adverse domination;

3. The defendant directors' and officers' silence in the face of widespread wrongdoing constitutes fraudulent concealment; and,

4. This Court's March 31, 1993 order applying the continuous representation doctrine to toll the accounting malpractice limitation period argues strongly for denial of the motions now before the Court. (RTC's Response to Johnson's Second Supplemental Authority in Support of Motion for Judgment on Pleadings, pp. 3–8).

The most important aspect of plaintiff's rebuttal argument is that it appears to abandon its position with respect to the applicability of a federal common law, and does not challenge the retroactivity of the amendment of 12 U.S.C. § 1821.

Accordingly, the pleadings, supplements, and rebuttals lead this Court to find three principal issues underlying the motions for judgment on the pleadings and motion for summary judgment. The issues which the Court considered are as follows:

1. Which statutes of limitations brought pursuant to Tennessee state law applies to the five causes of action?

2. When did the causes of action accrue?

3. Should the statutes of limitations be equitably tolled?

In examining the pleadings, the Court applied the standards of review for motions brought pursuant to Rules 12(c) and 56 of the Federal Rules of Civil Procedure.

*STANDARDS OF REVIEW*

■ Relying upon decisions rendered by the Court of Appeals for the Sixth Circuit in 1989 and 1990, plaintiff asserts that all its "allegations must be taken as true and all doubts must be resolved in its favor" pursuant to Rule 12(c). (RTC's Brief in Opposition at 3). This Court, however, finds a 1993 decision by the Sixth Circuit provides a slightly different approach. Consequently, the Court relies upon *United States v. Moriarty* in establishing the general standard of review for motions for judgment on the pleadings.

In *Moriarty,* the appellate court's process of review was only somewhat different from that which it had applied in the past. The Court wrote:

For purposes of [a motion brought pursuant to Rule 12(c) ] "all **well-pleaded** material allegations of the [non-movant] must be taken as true." "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *United States v. Moriarty,* 8 F.3d 329, 332 (6th Cir.1993) (emphasis added).

As the addition of the words "well-pleaded" may have a significant effect upon any decision this Court may render, the parties should be aware of the slight change in phrasing.

■ The Court also notes errors in the timing of the filing of the motion. Rule 12(c) provides:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. Fed.R.Civ.P. 12(c).

Even though the pleadings were not closed at the filing of the motions, the Court will consider the pleadings as plaintiff presents no objection to the premature filing.

■ In spite of the Court's acceptance of the standards espoused in *Moriarty,* the Court is aware that both parties presented matters outside the pleadings which were not excluded by the Court. As a result, the

motions for judgment on the pleadings are not to be treated as motions brought pursuant to Rule 12(c), but as motions for summary judgment. Fed.R.Civ.P. 12(c). The Court, therefore, cannot simply accept all well-plead allegations as true, but must apply the standards of summary judgment which require plaintiff to carry a greater burden than that necessitated by *Moriarty.*

Consequently, the Court applies the same standards to the motions for judgment on the pleadings as it applies to Defendant Latham's motion for summary judgment. Those standards governing motions for summary judgment have been well-established. In applying the standards, the Court is aware that an order is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As defendants are the movants, they bear the initial burden of showing the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552–53. Once they make the requisite showing, the burden shifts to the plaintiff to present some "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

Discrepancies regarding the authenticity of a material fact are within the scope of Rule 56 of the Federal Rules of Civil Procedure only if "the evidence is such that a reasonable jury could return a verdict for the [plaintiff]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). While "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," the "court is to construe the evidence and all inferences to be drawn from it in the light most favorable to the nonmoving party." *Id.* at 252, 255, 106 S.Ct. at 2512, 2513–14.

█ Despite the fact that the Court is compelled to draw all reasonable inferences in the light most favorable to the plaintiff, the Federal Rules of Civil Procedure requires the plaintiff to sustain a burden comparable to that of the defendants. Rule 56(e) states that:

[w]hen a motion for summary judgment is made and supported as provided in this rule, **an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading,** but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e) (emphasis added).

As a result, this Court cannot accept conclusory allegations contained within the complaint as a substitute for proof of an actual need for trial. *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

█ As plaintiff incorporated its response to the motions for judgment on the pleadings to Defendant Latham's motion for summary judgment, the Court turned its attention to the consolidated response. After examining the pleading, the Court found plaintiff's response fails to set forth specific facts with regard to certain issues. The Court, however, may not simply grant defendants' motions because plaintiff did not respond in the manner required by the rule. Summary judgment may only be granted if it is appropriate. Fed.R.Civ.P. 56(e).

## APPLICABLE TENNESSEE STATUTE OF LIMITATIONS

As the initial determination is which limitation period applies, the Court must begin its examination at this particular juncture. *Federal Savings & Loan Insurance Corp. v. Burdette,* 696 F.Supp. 1196, 1199 (E.D.TN. 1988). According to a Colorado federal district court, the examination entails a two-step analysis for the statute of limitations defense. *Resolution Trust Corporation v. Heiserman,* 839 F.Supp. 1457, 1469 (D.CO.1993). The Colorado court performed the analysis in view of a case in which the Resolution Trust Corporation, "RTC," alleged former bank officers and directors were liable for breach of their fiduciary duty of care, negligence per se, negligence, and gross, willful and wanton negligence in connection with the management of a federal savings and loan association. *Id.* at 1469.

■ Although the Colorado court's findings are based upon Colorado state law, the two-step inquiry is applicable to the case at bar. The district court wrote:

First, I must determine whether the RTC's claims were viable under state law when [the Savings & Loan Association] went into conservatorship. Second, if these claims were viable when the RTC was appointed conservator, ..., I must decide whether the RTC filed suit within the FIRREA guidelines. *Id.*

In employing the two-step inquiry, the Court finds some of the causes of action were not viable under state law when GTSB went into conservatorship in March, 1989. Consequently, the Court must examine each cause of action pursuant to the relevant statute of limitations.

■ As an initial matter, the Court must note that defendants' attempt to lump all five causes of action under T.C.A. § 48–18–601, the statute regarding breaches of fiduciary duty, is inappropriate. The statute applies expressly to breaches of fiduciary duty. T.C.A. § 48–18–601. Hence, for the Court to include other causes of action which were not addressed by the state legislature, the Court would be operating in a legislative posture as opposed to its judicial role.

■ In considering the applicable statute of limitations for the allegation of breach of the defendants' fiduciary duties, the Court must first determine whether to apply T.C.A. § 48–18–601, as suggested by defendants or T.C.A. § 48–813, as suggested by plaintiff. Plaintiff maintains T.C.A. § 48–813 should be employed since the conduct allegedly committed by defendants occurred prior to the effective date of T.C.A. § 48–18–601. (RTC's Brief in Opposition at 4). While "[a]cts of limitation will be construed to operate prospectively unless the contrary intention clearly appears," the Court finds T.C.A. § 48–18–601 applicable despite plaintiff's position to the contrary. *American Network Group, Inc. v. Kostyk,* 804 S.W.2d 447, 450 (Tenn. App.1990).

Even though the defendants' alleged conduct began in early, 1982 and the statute did not become effective until January, 1, 1988, the Court finds Tennessee authority for the application of the statute to the alleged breaches of fiduciary duty. The first case to provide guidance is one considered by the Tennessee Court of Appeals. In *American Network Group, Inc. v. Kostyk,* the appellate court applied the statute even though the cause of action accrued prior to the statute's effective date. *Id.* at 449.

The plaintiffs in *Kostyk* insisted that T.C.A. § 48–18–601 was inapplicable because the cause of action accrued before or during December, 1985, while the statute took effect January 1, 1988. The appellate court, however, rejected the argument. It held:

[O]n January 1, 1988, the former limitation of six years was shortened to one year, and plaintiff's had one year after January 1, 1988, within which to sue (their suit not being barred by the former six year statute.) Plaintiff's suit filed within that year on September 8, 1988, was therefore timely filed. *Id.* at 450.

Based upon the appellate court's holding, in order to determine the applicable statute of limitations, this Court examined the date the complaint was filed in view of the effective date of the statute.

The position is bolstered by a decision of the District Court for the Eastern District of Tennessee to which plaintiff cited. With regard to T.C.A. § 48–18–601, the district court wrote:

This provision would clearly control if it were not for the fact that it became effective January 1, 1988, after the FSLIC filed its complaint [in the first case], and there is no provision for the retroactive application of the statute. *Burdette* at 1201 fn. 3.

Utilizing the aforementioned rationale, this Court finds the statute must be applied in the case at bar.

The timing of the action also lends itself to the application of T.C.A. § 48–18–601. Although the defendants allegedly engaged in conduct leading to the aforementioned causes of action from early, 1982, through late, 1988, plaintiff did not file its suit until 1992. (Amended Complaint at 35–47). As plaintiff filed its action after the effective date of the statute, the Court finds the statute of limita-

tions established by T.C.A. § 48–18–601 applicable with regard to the alleged breaches of fiduciary duty.

The Court bases its determination of the applicable statute of limitations for the remaining causes of action on the Tennessee appellate court decision of *Harvest Corporation v. Ernst & Whinney.* According to *Harvest Corporation,* "In determining whether the purpose of an action is to recover damages which are personal, to property, or on account of a breach of contract, the Court must look to the complaint and ascertain the basis for which damages are sought." 610 S.W.2d 727, 729 (Tenn.App.1981). Thus, the criterion of looking to the type of damage alleged "is utilized regardless of whether the cause of action sounds in tort or in contract." *Prescott v. Adams,* 627 S.W.2d 134, 137 (Tenn.App.1981).

*Oak Ridge Precision Industries, Inc. v. First Tennessee Bank National Association* is one of the authorities for the aforementioned proposition. In that case, the plaintiff claimed the defendant was liable for negligence in the management of plaintiff's financial affairs. *Oak Ridge Precision Industries, Inc. v. First Tennessee Bank National Association,* 835 S.W.2d 25, 30 (Tenn.App.1992). It alleged the defendant was liable for negligence. *Id.* The appellate court, however, found the acts related to the administration of plaintiff's financial matters. *Id.* Since plaintiff failed to allege in its complaint that its damages did not arise from breach of contract, the alleged claim for negligence sounded in contract, and was treated accordingly. *Id.*

In the case at bar, three of the remaining causes of action appear to sound in tort, while the other sounds in contract. However, because the damages sought relate to defendants' alleged conduct with respect to specified financial transactions involving losses to property, the actions appear to be a mixture of tort and contract. (Amended Complaint at 66–68). Consequently, the statute of limitations for the economic losses would be either six years, pursuant to T.C.A. § 28–3–109, or three years, pursuant to T.C.A. § 28–3–105, depending upon the Court's analysis. *Goldtrap v. Cumberland*

*Hall of Nashville,* 1994 W.L. 446475, *2 (Tenn.App.1994).

The previous rule of the Tennessee appellate court was not as flexible. In 1981, the appellate court found economic losses, or losses "to a person's pocketbook," would be governed by the general six year contract statute. *Harvest Corporation* at 729. Ten years later, the appellate court broadened its perception. *Cumberland & Ohio Company of Texas, Inc. v. First American National Bank,* 936 F.2d 846, 848 (6th Cir.1991). In examining the pleadings, Tennessee courts now consider the cause of the alleged damage.

The case of *Alexander v. Third National Bank* exemplifies the new scrutiny. Although plaintiffs alleged a purely economic injury due to a breach of contract, the court found the factual basis of the cause of action to be damage to property. *Alexander v. Third National Bank,* 1994 W.L. 424287, *4 (Tenn.App.1994). According to the court, the damage resulted in a decrease of the property's value due to an alleged breach by defendant with regard to a loan commitment. *Id.* The decrease in the value of the property also allegedly affected the profitability of plaintiffs' partnership. *Id.*

Even though the cause of action sounded in contract and the alleged damage impacted upon plaintiff's pocketbook, the appellate court applied the three year statute of limitations pursuant to T.C.A. § 28–3–105, rather than the six year contract period. *Id.* As a result, "[a]ny economic loss [which] is merely a consequence of the property damage ... falls within the ambit of the three year statute of limitations." *Id.* In the case at bar, the alleged economic loss is also a consequence of alleged damage to property and to the pocketbook.

Another situation in which the alleged loss appears to be a mixture of damage to property and to the pocketbook was recently considered in another recent opinion of the Tennessee appellate court. In *Wilkins v. Third National Bank in Nashville,* plaintiffs brought an action against the defendant bank for breach of a financing agreement. 884 S.W.2d 758, 761–62 (Tenn.App.1994). Ac-

cording to the appellate court, "No genuine disputes exists concerning the application of the three-year statute of limitations in T.C.A. § 28–3–105(1)." *Id.*

■ In the case at bar, the facet of the alleged damage which relates to property resulted from loans secured by various liens. (Amended Complaint at 36–46). Although the transactions resulted in financial losses, each of the loans were secured by liens to the property. (Id.). Therefore, pursuant to the allegations contained in the amended complaint, even if the losses alleged are economic, they resulted from loss to, or devaluation of, the property. The statute of limitations for the causes of actions arising from those particular transactions is three years.

However, the insider abuses alleged in the amended complaint are not the consequence of losses to property. The impact of the alleged misconduct is directly to the pocketbook. According to the amended complaint, significant insider abuses by, or for the benefit of, Defendants Johnson, Wood, and Williams included:

1. excessive salaries and bonuses;

2. improper and excessive dividends;

3. use of luxury company owned vehicles;

4. ownership of airplanes;

5. grossly excessive out-of-town trips;

6. sale of stock by insiders to the GTSB Employee Stock Ownership Plan;

7. modification of vacation and sick leave policies resulting in cash payments;

8. and, creation of stock purchase agreements. (Amended Complaint at 46).

■ Consequently, the statute of limitations for the allegations of breach of implied contract, gross negligence, negligence, and negligence per se with regard to the aforementioned conduct is six years pursuant to T.C.A. § 28–3–109. Pursuant to T.C.A. § 28–3–105(1), the statute of limitations for those same allegations with regard to the secured loans began to run three years after the causes of action accrued. The statute of limitations for the allegations of breach of defendants' fiduciary duty is one year based upon T.C.A. § 48–18–601.

## ACCRUAL OF THE CAUSES OF ACTION

■ After reviewing the amended complaint and the pleadings, the Court finds neither party specifically addressed the accrual issue. The Court, therefore, examined the relevant statutes in determining when the causes of action accrued. However, only the statute pertaining to the alleged breaches of defendants' fiduciary duty provided any clear guidance. That particular statute establishes the date of the breach or violation, or the reasonable date of discovery of the breach or violation, as the date the statute of limitation accrues. T.C.A. § 48–18–601.

Although plaintiff contends it could not know of the breach while the defendants were exercising dominion and control, it fails to set forth specific facts demonstrating a genuine issue of material fact for trial. It was absolutely essential that the pleadings reflect evidence supporting the proposition in the manner required by the procedural rules. However, in the absence of express proof, the Court was required to review the pleadings submitted in response to the Rule 12(c) motions to determine if the record supported plaintiff's assertion.

■ After reviewing the pleadings and the relevant statutory authority, this Court finds plaintiff cannot reasonably claim lack of knowledge beyond the spring of 1981. At that time, the Federal Home Loan Bank Board, "FHLBB," was aware of the bank's declining net worth position and resultant decreased life expectancy. (Amended Complaint at 35). After the FHLBB warned the defendants, plaintiff contends defendants recklessly engaged in a series of property transactions in order to artificially enhance the bank's financial statement and extend its life. (Id. at 36). As a result of an examination of the statutory authority of the FHLBB, this Court determines the board's knowledge of the bank's precarious financial situation should be imputed to plaintiff.

Although the pleadings fail to discuss the process of plaintiff's appointment as Conservator in March, 1989, the Court is aware the Board possessed the authority to appoint a conservator as early as the spring of 1981

pursuant to 12 U.S.C. § 1464(d)(6)(A). The statute provides, in pertinent part:

> The grounds for the appointment of a conservator or receiver for an association shall be one or more of the following: ... (ii) substantial dissipation of assets or earnings due to any violation or violations of law, rules, or regulations, or to any unsafe or unsound practice or practices; (iii) an unsafe or unsound condition to transact business. **The Board shall have exclusive power and jurisdiction to appoint a conservator or receiver. If, in the opinion of the Board, a ground for the appointment of a conservator or receiver as herein provided exists, the Board is authorized to appoint _ex parte_ and without notice a conservator or receiver for the association.** 12 U.S.C. § 1464(d)(6)(A) (emphasis added).

The Board also possessed statutory power to audit financial transactions of GTSB. 12 U.S.C. § 1431(j).

Despite the Board's knowledge of the bank's precarious financial situation in 1981, and its statutory authority to audit and appoint a conservator, plaintiff argues that it did not know, and could not reasonably have known, of its cause of action until the appointment. To accept such a proposition would allow the Board to sit back and do nothing while directors and officers plunder a bank for any number of years, and then appoint a conservator to recoup the losses after claiming ignorance. In view of the aforementioned statutory authority, the Court must reject such willful blindness and find the breach occurred when the defendants entered into the various financial transactions.

 With regard to T.C.A. §§ 28–3–104 and 28–3–109, the statutes fail to specifically address when the causes of action accrued. By re-examining a case previously discussed, the Court finds authority reviewing the issue. In _Wilkins,_ the appellate court found the cause of action accrued, and the statute of limitations began to run when the bank breached the financing agreement instead of the date plaintiffs experienced the injury. _Wilkins_ at 761–62. With regard to the above-styled action, the breach of the implied contract and the allegations of negligence, negligence per se, and gross negligence accrued upon the commencement of each secured transaction.

As the transactions occurred between 1982 and 1988, the Court must attempt to identify the precise date the secured transactions were commenced for purposes of T.C.A. § 48–18–601 and the remaining causes of action. The Court begins its analysis by considering each of the nine transactions. Its effort is aided by the inclusion of the same allegation in the discussion of each transaction, with the exception of that relating to the Cabot Lodge Transactions.

Each discussion, excluding that of the Cabot Lodge Transactions, includes the allegation that:

> GTSB engaged in this transaction based upon reckless, insufficient, and imprudent underwriting as described in paragraphs 224 and 225 of this Complaint. This transaction resulted in numerous regulatory violations as described in paragraph 226 of this Complaint. (Amended Complaint at 37–43).

Although the Court was initially concerned with whether the transactions were of a continuing nature, the singular form of the word "transaction" alleviates that particular concern.

 As plaintiff refers to the transactions in the singular form, the Court determines that the causes of actions for all of the secured transactions, with the exception of the Cabot Lodge Transactions, accrued on the initial date. Thus, the causes of action for the eight secured transactions accrued as follows:

1. The causes of action for the Mississippi Farm Loan accrued on March 10, 1982;

2. The causes of action as relate to the Hall Pinehurst Associates transactions accrued on June 21, 1982;

3. The claims relating to Ranchester Associates, Ltd. accrued June 28, 1982;

4. The Hall Westchester Associates causes of action accrued January 31, 1982;

5. On October 19, 1982, the cause of action for Wisconsin Hall accrued;

6. The statute of limitations for the actions relating to the Sunset Rill transaction began to run on December 30, 1982;

7. The causes of action which arose from the Falcon Lair transaction accrued on August 15, 1983; and,

8. The claims relating to the Stratford/Fox Hollow/Par Corporation transaction accrued April 23, 1984. (Id. at 36–42).

A determination of when the causes of action relating to the Cabot Lodge Transactions, however, is not as uncomplicated.

■ The amended complaint establishes that the GTSB invested in the development of six hotels, the Cabot Lodge Transactions, between the middle of 1984 through, approximately, November, 1988. (Id. at 44). However, the pleading fails to identify the precise dates of each the six transactions. Consequently, the Court is unable to establish an exact date for purposes of accrual.

Nevertheless, Rule 56 compels the Court to make reasonable inferences in favor of the non-movant, plaintiff. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. As a result, the Court will infer that the causes of action accrued sometime in November, 1988. For ease of reasoning, the date the causes of action accrued with regard to the Cabot Lodge Transactions will be set as November 30, 1988.

The Court's inquiry into the accrual of the causes of action relating to the alleged insider abuses also requires extensive supposition. Defendants Johnson, Wood, and Williams allegedly "subjected the assets of GTSB to a wide variety of insider abuses." (Amended Complaint at 46). While the complaint lists those abuses plaintiff feels are significant, it does not discuss the time frame of the alleged abuses. Plaintiff's failure to include the specific dates and to fully identify Defendant Wood challenges the Court's ability to determine when the causes of action accrued.

The Court is aware of a few specific examples of the alleged abuses. On November 1, 1988, Defendant Wood obtained a loan for which payment remains outstanding. (Amended Complaint at 47). Prior to Defendant Wood's loan, on October 3, 1988, Defendant Williams executed a promissory note for a loan which has not been repaid. (Id).

■ Based on the limited information, the Court concludes the last allegation of insider abuse perpetrated by Defendant Wood occurred on November 1, 1988, and the causes of action also accrued on that day. The last occurrence of alleged abuse by Defendant Williams is assumed to be October 3, 1988, which is also assumed to be the day the statute of limitations began to run. And, as Defendant Johnson resigned from the board in July, 1985, this Court infers that the statute of limitations began to run on July 31, 1985 with regard to Defendant Johnson. (Amended Complaint at 5).

In sum, the Court makes the following findings with respect to the accrual of the causes of action:

a. Mississippi Farm Loan Transaction accrued March 10, 1982;

b. Hall Pinehurst Associates Transaction accrued June 21, 1982;

c. Ranchester Associates, Ltd. Transaction accrued June 28, 1982;

d. Hall Westchester Associates Transaction accrued January 31, 1982;

e. Wisconsin Hall Transaction accrued October 19, 1982;

f. Falcon Lair Transaction accrued August 15, 1983;

g. Stratford/Fox Hollow/Par Corporation Transaction accrued April 23, 1984;

h. Cabot Lodge Transactions accrued November 30, 1988;

i. Insider abuses by Defendant Johnson accrued July 31, 1985;

j. Insider abuses by Defendant Williams accrued October 3, 1988; and,

k. Insider abuses by Defendant Joseph Wood accrued November 1, 1988.

## TOLLING OF THE APPLICABLE STATUTES OF LIMITATION

The last area this Court must address is whether the applicable statutes of limitation are tolled by the control exercised by the defendants during their alleged misconduct. Plaintiff contends the doctrine of adverse domination operates to toll the statutes of

limitation until it became conservator. (RTC's Brief in Opposition at 5). Pursuant to the doctrine of adverse domination, the statutes of limitation would be tolled during the time the GTSB was controlled by the alleged wrongdoers. *Resolution Trust Corporation v. Farmer*, 865 F.Supp. 1143, 1151–52 (E.D.Pa.1994).

Although federal district courts in the Eastern District of Tennessee have applied the doctrine, this Court disagrees with its application. The Court notes:

> The development of the adverse domination doctrine under state law in recent years has occurred almost exclusively in federal courts, with many district courts predicting in the absence of controlling state precedent that the states in which they sit would adopt the doctrine. *Federal Deposit Insurance Corporation v. Dawson*, 4 F.3d 1303, 1312 (5th Cir.1993).

A decision by the Court of Appeals for the Fourth Circuit supports this Court's restraint in applying the doctrine.

■ The Fourth Circuit declined to apply the doctrine after finding that it had not been expressly adopted by the state court. *Federal Deposit Insurance Corporation v. Cocke*, 7 F.3d 396, 402 (4th Cir.1993). Instead, the appellate court applied a state statutory tolling provision. *Id.* After reviewing relevant case authority, this Court finds Tennessee state courts have not **expressly** adopted the doctrine of adverse domination. Courts utilizing the doctrine of adverse domination apply a "complete domination test" or a "majority test" which is not even mentioned in the cases which employ a theory similar to the doctrine of adverse domination. *Farmer* at 1156–57.

As this Court rejects application of the doctrine of adverse domination in the absence of clear state intent, the Court turns to state law to determine whether the causes of action should be tolled. Aside from statutory tolling provisions, there are three types of estoppel in Tennessee. *Duke v. Hopper*, 486 S.W.2d 744, 748 (Tenn.App.1972). The type relating to the case at bar, *estoppel in pais*, "is an estoppel that does not arise from a record or written instrument, but arises from the conduct or silence of a party and is sometimes referred to as equitable estoppel." *Id.*

■ Despite case authority establishing the principles of estoppel and statutes making provisions, the doctrine is not favored under Tennessee law. *Bokor v. Holder*, 722 S.W.2d 676, 680 (Tenn.App.1986). Consequently, since plaintiff seeks to invoke estoppel, it must prove each and every element of the doctrine. (*Id.*). Plaintiff's burden is not lessened simply because defendants pursue dismissal through motions for judgment on the pleadings.

As the Court has previously noted, motions brought pursuant to Rule 12(c) are to be treated as motions for summary judgment when matters outside the pleadings are presented and not excluded by the Court. Fed. R.Civ.P. 12(c). In order to toll the statutes of limitations, plaintiff must set forth specific facts showing a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e). The Court must, therefore, examine the record to determine if plaintiff met its burden of production.

■ As an initial matter, the Court will commence its consideration with the allegations of breach of the defendants' fiduciary duties. The one year statute of limitations for breach of fiduciary duty is tolled for one year after the alleged breach is, or should have been, discovered if the defendants engaged in fraudulent concealment. T.C.A. § 48–18–601. The Court must, therefore, determine whether plaintiff sufficiently plead fraudulent concealment.

As a result, the complaint or other pleadings submitted by plaintiff must set forth specific facts showing the existence of the elements of fraudulent concealment. After reviewing the pleadings, the Court is unable to find "well-pleaded material allegations." *Id.* In making its determination, the Court relies upon a decision rendered by the District Court for the Eastern District of Tennessee which establishes the elements of fraudulent concealment.

■ The district court, writing in *Montcastle v. American Health Systems, Inc.*, set forth the following:

Fraudulent concealment may in certain circumstances toll the running of the statute of limitations. In order to avoid the statute of limitations on the basis of fraudulent concealment, however, plaintiff must affirmatively plead the following elements with particularity: (1) wrongful concealment by defendant of its actions; (2) failure by plaintiff to discover the facts giving rise to the cause of action within the limitations; and, (3) due diligence by plaintiff until such facts were discovered. 702 F.Supp. 1369, 1373 (E.D.TN.1988).

Pursuant to *Montcastle,* plaintiff must at a minimum plead the elements of fraudulent concealment in order to toll the one year statute of limitations.

While the Court may be able to infer the presence of the first two elements, the third element is noticeably absent from the amended complaint, the brief in opposition to the motions, and the response to the second supplement. While plaintiff discusses defendants' alleged concealment of its conduct and its inability to discover the facts giving rise to the cause of action, there is no discussion of due diligence. The failure to mention that element is particularly significant.

■■■ The importance of the element of due diligence is revealed in the following statement by the *Montcastle* court. The court writes:

Due diligence is arguably the most important of the ... factors. Suits of limitations are "vital to the welfare of society and are favored in the law." A plaintiff who seeks to avoid the statute of limitations "owes the courts, the public, and his adversaries a duty of diligence in discovering and filing his lawsuit." A plaintiff's mere ignorance of his cause of action does not toll the statute of limitations. Instead, the plaintiff's ignorance of his cause of action is an excuse such as to toll the statute of limitations only if it persists despite his reasonable diligence to discover his cause of action. Only those actions that would "deceive a reasonably diligent plaintiff" toll the statute of limitations. "Those plaintiffs who delay unreasonably in investigating circumstances that should put them on no-

tice will be foreclosed from filing, once the statute has run." *Id.*

While plaintiff was not required to prove it used due diligence, plaintiff was required to affirmatively plead the element.

■■■ Plaintiff's failure to sufficiently plead the requisite element prevents the Court from invoking the law tolling the statute of limitations based upon fraudulent concealment. In addition, even if the Court were to find fraudulent concealment, the claim was stale when the action was filed in 1992. Since plaintiff was appointed conservator in March, 1989, it should have filed its claim by March, 1990.

The Court is also unable to employ the applicable law and thereby toll the remaining causes of action pursuant to the doctrine of equitable estoppel employed in Tennessee. In Tennessee, "[b]efore a party can claim an estoppel, there must be on the part of the [claimant]: (a) lack of knowledge without fault of the true facts, (b) reliance upon the untrue facts, and (c) action based on the untrue statement or misrepresentation." *Hopper* at 748. *Hopper* also establishes, "When a man has been misled by the untruth propounded by another, and acted to his detriment in reliance upon the misrepresentation, the misleading party will be estopped to show that the true facts are contrary to those he first propounded." *Id.*

■■■ In summary, to toll the statute of limitations for the remaining causes of action relating to the secured transactions and allegations of insider abuses, plaintiff must show due diligence in discovering the facts and detrimental reliance. *Hopper* at 748. While plaintiff alleges dominion and control in paragraph 175 of the amended complaint and reckless and questionable conduct resulting in regulatory violations in paragraphs 178, 184, 187, 192, 196, 203, 206, 211, 221, and 224, plaintiff fails to show the due diligence and detrimental reliance required by *Hopper.* (Amended Complaint at 35–43). Plaintiff, however, ignores the requirement of "without fault of the true facts." *Hopper* at 748.

The Court is unable to ignore the elements mandated by the Tennessee courts when considering whether to toll the state statute of

limitations. In view of this Court's previous discussion with regard to the due diligence element of the claim of fraudulent concealment, the Court cannot disregard the FHLBB's knowledge of the bank's financial condition as early as the spring of 1981. Furthermore, while defendants' purpose for the secured transactions may have been to enhance the bank's financial statement, none of the pleadings contain any allegation that the FHLBB relied upon the artificially enhanced financial statement in refraining from exercising its statutory authority when the alleged misconduct began in 1982.

Under the totality of the circumstances in this particular case, the Court cannot toll any of the statutes of limitation pursuant to relevant state law and case authority.

CONCLUSION

Consequently, the Court makes the following findings with respect to the viability of the allegations of breach of fiduciary duty, breach of implied contract, negligence, negligence *per se*, and gross negligence at the time plaintiff filed the above-styled action:

a. *MISSISSIPPI FARM LOAN*—The cause of action accrued on March 10, 1982. The statute of limitations for the claim of breach of fiduciary duty ran in 1983. The remaining causes of action expired in 1985.

b. *HALL PINEHURST ASSOCIATES*—The cause of action accrued June 21, 1982. The statute of limitations for the claim of breach of fiduciary duty ran in 1983. The remaining causes of action expired in 1985.

c. *RANCHESTER ASSOCIATES, LTD.*—The cause of action accrued June 28, 1982. The statute of limitations for the claim of breach of fiduciary duty ran in 1983. The remaining causes of action expired in 1985.

d. *HALL WESTCHESTER ASSOCIATES*—The cause of action accrued January 31, 1982. The statute of limitations for the claim of breach of fiduciary duty ran in 1983. The remaining causes of·action expired in 1985.

e. *WISCONSIN HALL TRANSACTION*—The cause of action accrued October 19, 1982. The statute of limitations for

the claim of breach of fiduciary duty ran in 1983. The remaining causes of action expired in 1985.

f. *FALCON LAIR*—The cause of action accrued August 15, 1983. The statute of limitations for the claim of breach of fiduciary duty ran in 1984. The remaining causes of action expired in 1986.

g. *STRATFORD/FOX HOLLOW/PAR CORPORATION*—The cause of action accrued April 23, 1984. The statute of limitations for the claim of breach of fiduciary duty ran in 1985. The remaining causes of action expired in 1987.

h. *INSIDER ABUSES BY DEFENDANT JOHNSON*—At the latest, the cause of action accrued July 31, 1985. The statute of limitations for the claim of breach of fiduciary duty ran in 1986. The remaining causes of action expired in 1991.

i. *INSIDER ABUSES BY DEFENDANT WILLIAMS*—Approximately, the cause of action accrued October 3, 1988. The statute of limitations for the claim of breach of fiduciary duty ran in 1989. The remaining causes of action remain viable.

j. *INSIDER ABUSES BY DEFENDANT JOSEPH WOOD*—Approximately, the cause of action accrued November 1, 1988. The statute of limitations for the claim of breach of fiduciary duty ran in 1989. The remaining causes of action remain viable.

As a result of the expiration of the various statutes of limitation, the Court must grant judgment on the pleadings to all defendants with the exception of Defendants Linda M. Williams and Joseph B. Wood. A complete grant of summary judgment must also be entered in favor of Defendant J. Davant Latham. Partial judgment on the pleadings will be granted to Defendants Linda M. Williams and Joseph B. Wood only as to the allegation of breach of their fiduciary duty.

The detailed review made by this Court in consideration of the various motions for judgment on the pleadings and Defendant Latham's motion for summary judgment compels this Court to consider whether the remaining defendant directors and officers are also entitled to judgment based upon the

rationale espoused in this text. The Court must remain cognizant that the statutory authority, 12 U.S.C. § 1821(d)(14), through which plaintiff acts does not revive stale state law claims. *Dawson* at 1306–7. Plaintiff is, therefore, requested to show cause why the remaining defendant directors and officers should not be dismissed pursuant to Rule 56 of the Federal Rules of Civil Procedure within 30 days from the docketing of this order.

It is so Ordered.